Filed 07/24/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04411

| Julie Zeyzus v. John Chenger, et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss; Motion to Dismiss; Motion to Dismiss; Motion to Dismiss Amended Complaint (Chenger); Plaintiff's Amended Complaint - Lout; Plaintiff's Amended Complaint - Townsend; to Plaintiff's Amended Complaint - Byrne (Motion: 17; 21; 22; 23)

Filer:      Matthew S. Borick; Matthew S. Borick; Matthew S. Borick; D. Michael Noonan

Filed Date:      March 12, 2026; April 13, 2026; April 13, 2026; April 13, 2026

The parties in this case belonged to the Northeast Bat Working Group in 2022 and 2023. Plaintiff Zeyzus sued defendants Chenger, Lout, Townsend, and Byrne (and two others) for defamation. Named defendants have filed motions to dismiss (Mots. 17, 21, 22, 23). They have counsel. Zeyzus represents herself and opposes.

For the reasons that follow, the court grants defendants' motions (Mots. 17, 21, 22, 23).

## I.      Background

This section discusses the allegations most relevant and under the legal standards applicable to the pending motions.

Zeyzus principally alleges that defendants described her as a "criminal," "violent," or "unlawful person" who "others would need to be protected against." Am. Compl. ¶¶ 11, 60. "Between 2022 and 2023, Defendants provided false justifications to conference decision makers and a Vermont security company to falsely warrant the hiring . . . [of] armed security to protect meeting attendees from Plaintiff at the January 18-20, 2023 Northeast Bat Working Group Meeting in Burlington, Vermont ("VT Meeting")," "falsely identifying Plaintiff as a criminal." *Id.* ¶ 12.

In April 2022, defendant Lout responded to an email from Zeyzus about a defective website link. Lout wrote to co-defendant Monahan (who has not filed one of the motions addressed today) and another individual: "I'm ignoring [Zeyzus]. Chenger warned me/us about her. She's a very disruptive person from what I hear and have experienced." Am. Compl. Ex. 1. In another email that same day to the same two people, Lout wrote: "Did either of you respond to her? One of us responding is fine - I imagine it should be from me to protect you from her. Let me know!" *Id.* Ex. 3. Zeyzus alleges that, "based on [her] investigation," the warning from Chenger referenced in Exhibit 1 was communicated to Defendant Lout and others during the January 12-14, 2022 Northeast Bat Working Group annual meeting in Manchester, New Hampshire. *Id.* ¶ 15 (citing Ex. 2). Defendants Byrne, Bennet, Monahan, Townsend, and others

discussed by email in November 2022 plans to hire security for an upcoming annual meeting, apparently in response to "member safety concerns" and "select individuals of concern." *Id.* Ex. 4.

## II.  Discussion

Defendants Chenger, Lout, Townsend, and Byrne each separately move to dismiss. Chenger, Townsend, and Byrne move under Rule 12(b)(2) for lack of personal jurisdiction. All defendants move under Rule 12(b)(6) for failure to state a claim.

### A. Rule 12(b)(2) -- Personal Jurisdiction

"Vermont's long-arm statue, 12 V.S.A. § 913(b), permits state courts to exercise jurisdiction over nonresident defendants 'to the full extent permitted by the Due Process Clause' of the U.S. Constitution." *Fox v. Fox*, 2014 VT 100, ¶ 9, 197 Vt. 466 (quoting *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990)). *State v, Meta Platforms, Inc.*, 2025 VT 51, ¶ 13 ("So 'although the long-arm statue and the U.S. Constitution provide separate and distinct limitations on the authority of Vermont courts to enter judgments, the statutory and constitutional analyses in the case are one and the same.'") (citation omitted), *cert. denied*, No. 25-909, 2026 WL 1463234 (U.S. May 26, 2026). "A state court may exercise general jurisdiction only when a defendant is essentially at home in the State." *Meta Platforms, Inc.*, 2025 VT 51, ¶ 14 (internal quotations and citation omitted).

A defendant must have "minimum contacts" with the state, and the court must find it fair and reasonable to subject that defendant to suit in this jurisdiction. The court assesses whether "the defendant's conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 41 (1990). "This reasonableness requirement is met when the defendant purposefully directs activity toward residents of a forum state and the litigation arises out of, or relates to, that activity. The reasonableness requirement also prevents a defendant from being subjected to jurisdiction on the basis of fortuitous, attenuated, or random contacts." *Dall v. Kaylor*, 163 Vt. 274, 276 (1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *Northern Aircraft*, 154 Vt. at 41–42).

"Personal jurisdiction must be proved independently as to each defendant." *N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶ 15, 184 Vt. 303 (citing *Schwartz v. Frankenhoff*, 169 Vt. 287, 294 (1999)). "If a court chooses to rule on a motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone, the party opposing a motion need make only a prima facie showing of jurisdiction, or, in other words, demonstrate facts which would support a finding of jurisdiction," *Godino v. Cleanthes*, 163 Vt. 237, 239 (1995), (citation omitted). The court "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *N. Sec. Ins.*, 2008 VT 96, ¶ 15 (quotation omitted); see also *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 9, 201 Vt. 342 ("In assessing the submitted materials, the trial court eschews fact finding and simply accepts properly supported proffers of evidence as true and rules on the jurisdictional question as a matter of law.") (quotation omitted).

2

None of Chenger, Townsend and Byrne resides in Vermont. Chenger resides in Pennsylvania, Townsend in New York and Byrne in Maine. Vermont does not have "general" personal jurisdiction over those defendants and Zeyzus does not suggest otherwise. See *Meta Platforms, Inc.*, 2025 VT 51, ¶ 14 ("A state court may exercise general jurisdiction only when a defendant is essentially at home in the State.") (quotation omitted).

"Specific jurisdiction," in contrast, "is a claim-specific inquiry." *Id*. ¶ 15 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). The alleged statement by Chenger (a Pennsylvanian) that Zeyzus (another Penssylvanian) was "disruptive," allegedly communicated to Lout (a Vermonter) at the 2022 Manchester, New Hampshire meeting, may not by itself confer specific jurisdiction in Vermont over Chenger. Cf. *Daimler AG v. Bauman*, 571 U.S. 117, 152, 134 S. Ct. 746, 769, 187 L. Ed. 2d 624 (2014) ("Our cases have long stated the rule that a defendant's contacts with a forum State must be continuous, substantial, and systematic in order for the defendant to be subject to that State's general jurisdiction.") (Sotomayor, J., concurring).

Zeyzus also alleges that defendants made false statements about her to justify hiring a Vermont security company to protect others from her at the 2023 meeting held in Vermont. She alleges that defendants helped to plan the security for and attended the Vermont meeting. At this stage of the case, these allegations suffice to confer personal jurisdiction over defendants Chenger, Townsend, and Byrne because those alleged acts constitute "purposeful[] avail[ment] . . . within the forum State" and Zeyzus's defamation claim "arise[s] out of or relate[s] to" defendants' alleged acts in hiring security for and attending the Vermont meeting. *Meta Platforms, Inc.*, 2025 VT 51, ¶ 15 (quotation omitted). See also *Atl. Richfield Co.*, 2016 VT 22, ¶ 9 ("In assessing the submitted materials, the trial court eschews fact finding and simply accepts properly supported proffers of evidence as true . . . ."). These allegations amount to more than merely "fortuitous, attenuated, or random contacts." *Id*. (quotation omitted).

## B. Rule 12(b)(6) -- Failure to State a Claim

Defendants Chenger, Lout, Townsend, and Byrne all seek dismissal for failure to state a claim under Rule 12(b)(6). Defendants assert that Zeyzus fails to plead a cognizable claim for defamation under Vermont law. Chenger and Lout additionally claim that Zeuzus's claim is time-barred. Chenger adds that Zeyzus's claim warrants dismissal against him in the interest of judicial economy and on grounds of forum non conveniens. He notes that Zeyzus already brought the same claim against him in New Hampshire (where he resides). The New Hampshire Supreme Court has docketed the appeal of that case's dismissal.

"To state a claim for defamation, a plaintiff must allege the following: (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages." *Wolfe v. VT Digger*, 2023 VT 50, ¶ 13, 218 Vt. 408 (quotation omitted). A defamatory statement means one that "tends to tarnish a plaintiff's reputation and expose [them] to public hatred, contempt or ridicule." *Id*. (quotation omitted). "Truth . . . is a complete defense to defamation" but it is "not necessary to prove the literal truth of the

3

accusation in every detail . . . it is sufficient to show that the imputation is substantially true." *Id*. (citation and quotations omitted).

"While Vermont's pleading standards are liberal, a party claiming defamation must set forth enough information about the content of the communication complained of, the date on which it occurred, and the parties to whom the communication was made, to enable the defendants to defend themselves." *Virginia Gardner v. Hokenson*, No. 1007-10-17 Cncv, 2018 WL 11243023, at *3 (Vt. Super. Ct. May 10, 2018) (Mello, J.) (citing *Decker v. Vermont Educational Television, Inc.*, 13 F.Supp.2d 569, 573-74 (D. Vt 1998)).

In this case, Zeyzus has "failed to allege sufficient facts to establish a defamation claim against each defendant." *Dever v. Dugan*, No. 23-AP-404, 2024 WL 3045223, at *3 (Vt. June 12, 2024) (unpub. mem.). She has "failed to identify any specific false and defamatory statements in [her] amended complaint that any of the defendants made about [her], among other shortcomings." *Id*.

Zeyzus has specifically pleaded a few statements that the court does not find defamatory as a matter of law. In the April 2022 emails, Lout called Zeyzus a "very disruptive person," and suggested that she alone should respond directly to Zeyzus's email to "protect" others from her. Lout further wrote that Chenger had "warned" her about Zeyzus. Lout's emails constitute non-actionable statements of opinion. See *Grega v. Pettengill*, 123 F. Supp. 3d 517, 551 (D. Vt. 2015) (Crawford, J.) ("Expressions of opinion are not actionable unless they 'imply assertions of objective fact.'"); *Hoyt v. Klar*, No. 2020-235, 2021 WL 841059, at *2 (Vt. Mar. 5, 2021) (unpub. mem.) ("[D]efendant's statements suggesting that he believed the alleged victim was telling the truth cannot be the basis for a defamation claim because they were plainly statements of opinion, which is not capable of being proven true or false.") (citing *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 223 (2d Cir. 1985) ("[W]e have held that generally one cannot be liable simply for expressing an opinion.") and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.")).

The New Hampshire Superior Court reached the same conclusion. See *Zeyzus v. Chenger*, No.: 216-2025-CV-00013, slip copy at 7 (N.H. Super. Ct. Nov. 26, 2025) (Chenger's Mot. Ex. 1) ("At most, the statement reflects non-actionable opinion as a result of which the amended complaint continues to suffer from the same omission as the initial complaint.").

One may reasonably infer from her email only that Lout wanted to protect others from Zeyzus's supposedly "disruptive" conduct about which Chenger had "warned." Nothing supports an inference that Chenger suggested to Lout that Zeyzus was "violent," "unlawful," or "a criminal." Am. Compl. ¶¶ 11, 60. See *Montague*, 2019 VT 16, ¶ 10 (court need only make "reasonable inferences in the plaintiff's favor").

The other specific statements alleged by Zeyzus come from a November 2022 email chain. It includes an email from Byrne, reporting on the "Conference Security Subgroup['s]" efforts to hire security for (presumably) the upcoming Burlington conference. Byrne wrote: "We asked about potentially having a background check conducted, but the individual that was being

4

checked would have to consent and sign a waiver." She added: "Another topic the subgroup would like input on is: if select individuals of concern are no longer attending should we then cancel the security services? The subgroup is of the opinion that the services should still be used to prevent incidents that may still occur." Am. Compl. Ex. 4.

Townsend responded: "Thanks for all the work on this. I think security staff should be uniformed, and we should have them under contract regardless of what individual NEBWG members do or don't attend." *Id.*

Neither Byrne's nor Townsend's email reference Zeyzus. *Galley Schuler v. Rainforest All., Inc.*, 161 F. Supp. 3d 298, 312–13 (D. Vt. 2016) (Reiss, C.J.) ("Vermont law requires that the allegedly false and defamatory statement be 'concerning another' . . . such that "'an individual plaintiff must be clearly identifiable [in an allegedly defamatory statement] to support a claim for defamation.'") (citations omitted) (brackets in original), *aff'd sub nom. Schuler v. Rainforest All., Inc.*, 684 F. App'x 77 (2d Cir. 2017). Byrne's and Townsend's emails state nothing false. *Wolfe*, 2023 VT 50, ¶ 13. Byrne's describes the consent and waiver requirement for any person subject to background check and solicits input on canceling security services. Townsend's email signals her opinion with the preface, "I think." The court finds these emails do not constitute statements actionable in defamation.

Zeyzus's claim otherwise relies on conclusory and speculative inferences. See *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 28, 217 Vt. 611 (courts do not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions") (quotation omitted). For instance, she suggests that hiring a security firm for the Burlington conference portrayed her as a criminal or violent person to others. The act of hiring security does not constitute a "statement" to support a defamation claim. *Wolfe*, 2023 VT 50, ¶ 13. Zeyzus has cited and the court has found no authority suggesting otherwise.

Zeyzus suggests that because defendants hired security when the Bat Working Group meetings had never had security previously, defendants must have made defamatory statements about her at some point. Zeyzus's pleadings do not support her inference as reasonable. See *Montague*, 2019 VT 16, ¶ 10 (court need only make "reasonable inferences in the plaintiff's favor"). Zeyzus has not alleged why the court should rule out other explanations for the hiring of security.

Zeyzus alleges that on October 4, 2022, she made a complaint to the Bat Working Group's executive committee about the statements in Exs. 1 and 3. The committee apparently included at least Lout, Bryne, and Townsend. Zeyzus alleges that in the committee's response to her on October 19, 2022, it described the statements in Exhibits 1 and 3 as "factually accurate." Am. Compl. ¶ 18. Defendants' email characterization does not transform nonactionable statements of opinion into actionable statements of fact. The court already concluded the statements in Exs. 1 and 3 constitute opinion as a matter of law.

The statements in Exhibits 1 and 3 are time-barred in any event. In Vermont, the statute of limitations for defamation is three years. 12 V.S.A. § 512(3); *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 85 (2002). Zeyzus knew about them by October 4, 2022 at the latest

when she complained about them to the Bat Working Group's executive committee.  She filed her original complaint on October 8, 2025, more than three years later.

The court does not reach defendant's additional bases for dismissal.

### III.     Order

For the reasons discussed above, the court grants defendants' motions to dismiss (Mots. 17, 21, 22, and 23).

Electronically signed pursuant to V.R.E.F. 9(d) on July 24, 2026.

Colin Owyang
Superior Court Judge